UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
CALVIN SHERMAN, *pro se*                                        :
                                                                :
                                     Plaintiff,                 :
                                                                :
             -against-                                          :     **OPINION AND ORDER**
                                                                :     11-CV-4385 (DLI)(JMA)
MS. LAURIE HARRIS, Supervisor of Vocational                     :
and Educational Services for Individuals with                   :
Disabilities, Brooklyn Office; MARK                             :
WEINSTEIN, Supervisor and Director of                           :
Counseling; JOSEPH TEVINGTON, Supervisor;                       :
REBECCA LAWRENCE, Counselor; JAMES                              :
SAMUELS, Counselor; JUDITH SCHNEIDER,                           :
Esq., Hearing Officer (All are or have been                     :
employed by VESID); EMPLOYEES OF THE                            :
UNIVERSITY OF THE STATE OF NEW                                  :
YORK, THE STATE EDUCATION                                       :
DEPARTMENT OFFICE OF VOCATIONAL                                 :
AND EDUCATIONAL SERVICES FOR                                    :
INDIVIDUALS WITH DISABILITIES (VESID),                          :
                                                                :
                                     Defendants.                :
---------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Calvin Sherman ("plaintiff") commenced this *pro se* action against defendants Laurie Harris ("Harris"), Mark Weinstein ("Weinstein"), Joseph Tevington ("Tevington"), Rebecca Robinson-Lawrence ("Robinson-Lawrence"), James Samuels ("Samuels"), and Judith Schneider ("Schneider") alleging racial discrimination and retaliation under 42 U.S.C. §§ 1983, 1985(3), 1986 ("Sections 1983, 1985, 1986"), and Title VI of the Civil Rights Act of 1964 ("Title VI"). (*See* Compl. at 3, 11.)  Plaintiff principally claims that defendants, as Vocational and Educational Services for Individuals with Disabilities ("VESID") staff, racially discriminated against him when they conditioned his VESID funding on plaintiff sitting for a psychiatric examination. Additionally, the Court construes the complaint to assert discrimination claims under Title IX, 20

1

U.S.C. § 1681 *et seq.* ("Title IX"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 ("Title II ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Individual with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"). (*Id.* at 3, 9-11, 35.) Finally, plaintiff asserts a due process claim under Section 1983 and a breach of contract claim under state law. (*Id.* at 7-9.)

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, defendants Weinstein, Tevington, Robinson-Lawrence, and Mr. Samuels ("moving defendants") move to dismiss the claims against them in the complaint. (*See* Decl. in Supp. of Mot. to Dismiss ("Defs.' Decl."), at 2.) Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, plaintiff moves for an entry of default judgment as to defendants Harris and Schneider. (*See* Doc. Entry Nos. 24, 25.) For the reasons set forth below, the motion to dismiss is granted and the motion for default judgment is denied.

I.     **BACKGROUND**

New York Vocational and Educational Services for Individuals with Disabilities ("VESID") is a state agency funded by the federal government under the Rehabilitation Act. It is a subdivision of the New York State Department of Education and administers New York's vocational rehabilitation programs to provide counseling and other services necessary to enable disabled individuals to "prepare for and engage in gainful employment." 29 U.S.C. § 720(a)(2)(B). Plaintiff is a disabled African-American man in his early 60's. (Dec. 17, 2010 VESID Hearing Transcript, Compl., Ex. A ("Tr.") 67.) Plaintiff previously had attended Medgar Evers College in 2007 with VESID funding as part of a vocational program; however plaintiff had academic difficulties and his VESID case was closed in August 2007. (Tr. 36; *see also* Ex. I.) On February 4, 2009, plaintiff reapplied for services with the VESID in order to pursue an

2

Individualized Plan of Employment ("IPE"), with a work goal of opening a take-out restaurant. (Tr. 36-38.) Plaintiff met with the vocational rehabilitation counselor ("VRC") assigned to him, James Samuels, on February 4, 2009 and again on May 21, 2009 and was discouraged from pursuing the work goal of opening a restaurant. (*Id.* at 37-38.) Plaintiff claimed this discouragement was the result of jealousy on the part of Samuels, whom plaintiff alleged was an ex-inmate. (Compl., 10.)

On May 29, 2009, plaintiff met with VRC Supervisor Joseph Tevington to request a new VRC. (Tr. 38.) Tevington set up a new IPE for plaintiff for the fall 2009 semester, which included the work goal of teacher aide, and assigned plaintiff VRC Rebecca Robinson-Lawrence. Under this IPE, VESID would provide financial assistance for books and carfare as long as plaintiff was not on academic probation. (Compl. 9; *see also* Tr. 38-39, 40.) Plaintiff claimed Robinson-Lawrence was negative, "very nasty" and disrespectful to him over the phone, and alleged her behavior was part of a "campaign of harassment" against him led by Tevinton and Samuels. (Compl. 25.) After learning of plaintiff's prior criminal conviction, which plaintiff had withheld, Robinson-Lawrence determined the work goal of teacher aide may not be appropriate, because it may be difficult to obtain employment. (Tr. at 46, 89; 178.) Plaintiff refused to work with Robinson-Lawrence during the fall 2009 semester and again requested a different VRC. (Tr. 40-41.) Tevington met with him and Pastor Ken Bogan, who was associated with the Crown Heights Mediation Center, on January 21, 2010 to discuss plaintiff's spring 2010 IPE. (Tr. 41.) Plaintiff previously had been put on academic probation because his grade point average ("GPA") had fallen under the required 2.00. (*Jan. 14, 2010 Letter from Mr. Phifer to Tevington*, Compl., Exh. F.) Plaintiff's IPE work goal was changed to social work aide, and though he had not yet been taken off academic probation, Tevington noted that sufficient

3

progress was made for VESID to offer funding for books and carfare for the spring 2010 term. (*Id.* at 41-45.)  Plaintiff's GPA at the time had risen to a 3.7.  (Compl. 13.)  VESID provided plaintiff with assistance for the spring 2010 semester.  (Tr. 43, 48.)

During February of 2010, in a series of emails sent to Tevington, plaintiff raised the issue of funding for a $323.47 spring tuition balance, which not been authorized by VESID under his current IPE.  Tevington and Robinson-Lawrence believed plaintiff had requested only funding for carfare and books, and he had never asked for tuition.  (Tr. 44, 47-48, 96.)  However, plaintiff saw this omission as purposeful, blamed Robinson-Lawrence and her "negative and discriminatory behavior" for omitting tuition from his IPE, and stated that, if Tevington ignored his emails, he was also responsible for her discriminatory behavior.  (Compl. 12; Tr. 47-48.) Tevington authorized a retroactive tuition payment for the spring 2010 semester on July 26, 2010.  (Tr. 53; *see also* Decision and Order at 6-7, Defendants Declaration of Charles E. Enloe in Support of Motion to Dismiss ("Defs.' Decl."), Ex. A.)

As proof that the omission of tuition funding was purposeful, plaintiff points to a May 14, 2010 letter from Medgar Evers College addressed to Robinson-Lawrence concerning the tuition amount and an April 28, 2010 letter from Medgar Evers College addressed to Ms. Meltz, an employee at VESID, regarding the $323.35 balance that was past due.  (Compl. 12; *see also* Compl., Exs. D and E.)  From May to June of 2010, plaintiff and Tevington exchanged a series of emails related to college financial aid forms and basic VESID requirements.  (*Id.* at 49-51.) Plaintiff's confusion with the forms and requirements and his behavior towards VESID staff, including accusing Robinson-Lawrence of spitefully orchestrating what were actually standard requirements and calling certain employees "racist," raised concerns for Tevington and VESID. (*Id*. at 51-52, 137.)

4

On July 14, 2010, Tevington, Weinstein, and Robinson-Lawrence met with plaintiff. (Compl. 7-8; *see also* Tr. 57-60.) Prior to this meeting, VESID prepared a new IPE that continued funding for tuition, books, and fees, but required plaintiff to sit for a psychiatric assessment, "to get a better idea as to what services [plaintiff] might need and what he would be able to handle regarding stress and other kinds of tolerances." (Tr. 137-39*; see also id.* at 101-02.) Believing that the psychiatric assessment requirement was racially induced, plaintiff refused and walked out of the meeting. (Compl. 6-8; *see also* Tr. 128.)

Plaintiff requested a hearing under Rehabilitation Act of 1973, 29 U.S.C. 701 *et seq*. Pursuant to plaintiff's request, on December 17, 2010, Judith Schneider, the VESID Impartial Hearing Officer ("IHO"), conducted a hearing to determine:

> Did VESID act appropriately and lawfully under federal and state law and VESID's written policies with regard to the funding of certain college related expenses by, among other things, conditioning continued funding upon Petitioner's agreement to undergo a psychiatric evaluation or were its actions a consequence of racial bias by staff members or retaliation for claims of racism by Petitioner.

(Decision and Order at 3, Defs.' Decl., Ex. A.) Plaintiff and defendants Tevington, Weinstein, Robinson-Lawrence, and Harris were present and testified, with Harris representing VESID. (*Id.* at 3, 9.) The IHO outlined the hearing's procedures, especially concerning objections; however throughout the hearing, plaintiff interrupted defendants' testimony and made accusatory remarks. (*id.* at 7-11, 23-25); (*see, e.g., id.* at 50-51, 60, 89-94, 117-19; 138-139.) As he does in the complaint, plaintiff repeatedly accused Samuels, Robinson-Lawrence, Tevinton, and Weinstein of being engaged in a conspiracy of racial animus towards him and a "cover-up," but provided no specific instances or occasions of discrimination. (Compl. 20-21.) At the VESID hearing, Weinstein explained the purpose of the psychological assessment to plaintiff,

> It's really all geared for getting you to work and prepared to work, but [] we need to get the background information on your stress tolerances, your ability to handle

5

>different situations, what to expect, and the way you were behaving and acting was giving us concern that you were not really showing the kind of adjustment to move towards employment. It was not working.

(*Id* at 148-49.) Further, continued funding would not be contingent on the results of the assessment. (*Id.* at 128 ("Mr. Sherman was asked to agree to go for a psychiatric assessment while he attended school. We were not making anything contingent on anything, we just wanted to have that done.") Plaintiff explained his aversion to the psychiatric assessment was because African-Americans have been victimized in the past through medical and psychological evaluations, and the distortion of the results. (Tr. 168, 179-80.)

On April 12, 2011, the IHO dismissed the matter, concluding that VESID's actions were not based on racism or retaliation, but rather VESID had a reasonable and lawful basis for setting a psychiatric evaluation as a condition for continued funding, especially in light of plaintiff's interactions with VESID staff, his confusion regarding standard college aid forms, and his failure to disclose his prior criminal record. (Decision and Order, at 20, Defs.' Decl., Ex. A.)

Rather than seek review of the IHO decision pursuant to Section 722 of the Rehabilitation Act, plaintiff filed this action on September 9, 2011 alleging various civil rights violations and seeking $4,500,000 in compensatory damages and $4,500,000 in punitive damages. (*See* Compl. 4.) Plaintiff's complaint is a litany of accusatory and conclusory statements that defendants are racist or "Uncle Toms" who are part of a conspiracy to prevent plaintiff from fulfilling his education because of racial animus, but plaintiff does not provide any specific instances of discriminatory actions, nor does plaintiff show he was substantively harmed.

## II. MOTION TO DISMISS

### A. Legal Standard

In reviewing this complaint, the Court is mindful that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Court construes *pro se* pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted).  However, "subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *United States v. Cotton,* 535 U.S. 625, 630 (2002).

Here, in addition to the Section 1983, 1985, 1986, Title VI and state law claims, plaintiff appears to assert a variety of claims pursuant to Section 504 of the Rehabilitation Act, the IDEA, Title II ADA, and Titles VII and IX.  Though plaintiff does not say whether his claims are against defendants in their individual or official capacities, the Court examines the merit of these claims against defendants in both capacities and in a manner that liberally construes the plaintiff's complaint in light of his *pro se* status.

B.      Standard of Review

Subject matter jurisdiction is a threshold issue.  Thus, where a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first. *Sherman v. Black,* 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F. 2d 674, 678 (2d Cir. 1990)).  It is axiomatic "that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F. 3d 56, 62 (2d Cir. 2009) (quotation marks omitted).  "If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*." *Id*.  Federal subject matter jurisdiction exists only where the action presents a federal question pursuant to 28 U.S.C. § 1331 or where there is diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *See Petway v. N.Y.C. Transit Auth*., 2010

7

WL 1438774, at *2 (E.D.N.Y. Apr. 7, 2010), *aff'd*, 450 F. App'x. 66 (2d Cir. 2011). Federal question jurisdiction is invoked where the plaintiff's claim arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law within the meaning of the general federal question statute only if the federal question appears from the facts of the plaintiff's well-pleaded complaint. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908).

On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.*, 313 F. 3d 768, 776 (2d Cir. 2002). However, the court need not accept "legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F. 3d 147, 153 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F. 3d 69, 72 (2d Cir. 1995).

C.  Discussion

1.  *Title VII and IDEA Claims are Inapplicable and Subject to Dismissal*

Title VII and IDEA only prohibit discrimination against employees and children under 21 years of age, respectively. *See* 42 U.S.C. § 2000e-2; 42 U.S.C. § 1412(a)(1)(A). Since plaintiff is neither an employee of VESID nor under the age of 21, his claims fail to come under the ambit of these statutes and are inapplicable. Accordingly, the motion to dismiss the Title VII and IDEA claims pursuant to Rule 12(b)(6) is granted in its entirety.

The Court examines the remaining claims as against defendants both in their official

8

capacities and in their personal capacities.

> 2. *Claims Against Defendants in Their Official Capacities are Subject to Dismissal*
>
>> a. **Eleventh Amendment Immunity Applies to the Sections 1983, 1985, 1986, Title II ADA and State Law Claims Against Defendants in their Official Capacities**

The Eleventh Amendment's grant of absolute immunity to the states extends to claims for damages against state officials sued in their official capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Eleventh Amendment immunity typically deprives courts of jurisdiction over suits brought by private parties against State entities. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). However, exceptions to this immunity exist when: (1) Congress has statutorily abrogated immunity, (2) the state voluntarily waives such immunity, or (3) the plaintiff sues for "prospective injunctive relief" from violations of federal law under the *Ex Parte Young* doctrine. *In Re Deposit Ins. Agency*, 482 F. 3d 612, 617 (2d Cir. 2007).

First, Congress has neither abrogated immunity with respect to Section 1983, 1985, or 1986 claims*, Quern v. Jordan*, 440 U.S. 332, 342 (1979), nor with respect to State law claims. *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-41 (2002). Second, New York has not waived its immunity to such claims. *Finkelman v. New York State Police*, No. 06-CV-8705, 2007 WL 4145456, at *3 (S.D.N.Y. Nov. 15, 2007) (explaining New York has not waived immunity to Sections 1983, 1985, and 1986 claims); *Martin v. Baruch Coll.*, No. 10-CV-3915, 2011 WL 723565, at *2 (S.D.N.Y. Feb. 18, 2011) (explaining New York has not waived its immunity to state law claims brought in federal court). Third, since plaintiff seeks only monetary damages and not injunctive relief, (*see* Compl. 29), the *Ex Parte Young* doctrine does not apply. *Edelman*, 415 U.S. at 677. Thus, no exceptions apply here.

The New York State Education Department is a state agency entitled to Eleventh

Amendment immunity. *Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz*, 290 F. 3d 476, 480 (2d Cir. 2002), *cert. denied*, 537 U.S. 1227 (2003). As such, the moving defendants, in their official capacities, *a fortiori* are entitled to immunity for the state law breach of contract claim, the Sections 1983, 1985, and 1986 claims, as well as the Title II ADA claim. *See Nicolae v. Office of Vocational & Educ. Services for Individuals with Disabilities*, 257 F. App'x 455, 456-57 (2d Cir. 2007) (holding that "VESID's sovereign immunity under the Eleventh Amendment has not been abrogated for purposes of the ADA. . . . Nor has New York State waived it."). Pursuant to Rule 12(b)(1), defendants' motion to dismiss the Sections 1983, 1985, 1986, Title II ADA, and state law claims against the moving defendants in their official capacities is granted.

### b. Section 504, Title VI, and Title IX Claims Against Defendants in Their Official Capacities Fail to State a Plausible Claim

The Supreme Court has held that Congress abrogated Eleventh Amendment Immunity under Title VI, Title IX, and § 504 of the Rehabilitation Act. *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 72 (1992). However, plaintiff's allegations of discrimination do not contain sufficient factual allegations to rise above the level of "legal conclusions," and, therefore, plaintiff fails to state a plausible claim for which relief can be granted under Title VI, Title, IX, or Section 504. *See Iqbal*, 556 U.S. at 678-79.

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To withstand a motion to dismiss for failure to state a claim, plaintiff must allege that he, (1) has a disability for the purposes of Section 504, (2) is otherwise qualified for the benefit that has been denied, and (3) has been denied the benefit by reason of the disability. *Weixel v. Bd. of Educ. of City of New*

10

*York*, 287 F. 3d 138, 146-47 (2d Cir. 2002).

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  To state a Title VI violation, plaintiff must plausibly claim, in pertinent part, that: (1) defendant discriminated against him on the basis of race, (2) the discrimination was intentional, and (3) the discrimination was a substantial or motivating factor for defendant's actions. *Tolbert v. Queens College,* 242 F. 3d 58, 69 (2d Cir. 2001).  Title VI is parallel to and operates in the same manner as Title IX, "except that it prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs," *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (internal citations omitted).

In the instant case, the central issue for all three claims is whether the requirement to undergo a psychiatric assessment as a condition of continued VESID funding was motivated by discrimination and part of a larger discriminatory conspiracy against the plaintiff, be it on the basis of race (Title VI), gender (Title IX), or disability (Section 504).

First, plaintiff does not explain what benefit he was denied, or how he was substantively harmed.  Plaintiff claims defendants withheld VESID funding for his college work, thereby jeopardizing his ability to attend college and causing him hardship.  (*See* Compl. at 21.) However, VESID helped fund plaintiff's education, and planned to continue doing so.  Plaintiff's fall 2009 and spring 2010 IPEs provided funding for carfare and books, despite the fact that plaintiff remained on academic probation, because VESID recognized plaintiff's grades were improving.  Further, even if failing to include tuition was an omission by VESID, as plaintiff

11

claims, VESID retroactively paid the balance of plaintiff's spring 2010 tuition when so plaintiff requested. (Tr. 41-45, 48.) Plaintiff's fall 2010 IPE included funding for tuition, as well as carfare and books, with the condition of a psychiatric assessment. (*Id.* at 137-39.) Therefore, it was plaintiff's refusal to sit for the psychological assessment that caused VESID to cease funding his education.

Second, even if a psychiatric assessment requirement for funding was a form of benefit denial, VESID had legitimate, non-discriminatory reasons for doing so: plaintiff's antagonistic interactions with VESID staff, including attributing misunderstandings and bureaucratic delays and requirements to racism and a conspiracy to cover up racism; his confusion regarding standard college aid forms; and his failure to disclose his prior criminal record. (*See* Tr. 140-41.) Plaintiff offers nothing to rebut the non-discriminatory justifications for requiring a psychiatric assessment. Instead plaintiff's complaint provides only conclusory assertions that the psychiatric assessment and VESID changes to plaintiff's IPE were motivated by discriminatory animus to thwart plaintiff's educational goals. (*See, e.g.,* Compl. at 9 (plaintiff alleging there had been no mention of his plan being conditioned on a psychiatric evaluation until plaintiff said that "Defendant Weinstein and Defendant Tevington were both thoroughly unscrupulous and a racist").) "As such, the allegations are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

Furthermore, plaintiff "would need to allege more by way of factual content to "nudg[e]" his claim of purposeful discrimination "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quoting *Twombly,* 550 U.S. at 570). Plaintiff claims that VESID commonly uses and manipulates mental assessments to cover up their discriminatory conspiracies. (Pl.'s Omnibus Aff. in Opp'n to Defs.' Mot. ¶ 8-9.) Plaintiff contends that Mr. Samuels and Robinson-

12

Lawrence based their IPE work goal recommendations on discriminatory animus because they are guilty of "Uncle Tomism" by "conspiring with their Caucasian supervisor's (sic), solely to keep their job[s]." (Compl. at 20-21.) Plaintiff additionally alleges that Tevington and Weinstein employed a deceptive and discriminatory plan to cover up for Mr. Samuels' prior criminal record and thwart plaintiff's work goal desires. (*Id.* 3-6.) However, no evidence was presented to suggest that Mr. Samuels had a prior criminal record or that Tevington, Weinstein, or Robinson-Lawrence were aware of such a record, even if it existed.

Moreover, Tevington previously had granted plaintiff VESID funding for the spring 2010 semester despite plaintiff's academic probation status. (Tr. 41-45, Compl., Ex. A.) Despite confirming that the initial VESID agreement to provide funding, if plaintiff was removed from academic probation, was "for book(s) and carfare" and not tuition, (Compl. 9), plaintiff nevertheless accused Robinson-Lawrence of a discriminatory purpose in failing to provide tuition, and Tevington of making a replacement payment to cover the remaining tuition balance from plaintiff's spring 2010 semester only to "cover up" for his employees. (*See* Decision and Order, at 6-7, Def. Decl., Ex. A.)

Consequently, plaintiff has failed to state a plausible claim as to whether defendants' requirement of a psychiatric assessment was because of racial, gender, or disability discrimination under Title VI, Title IX, and Section 504, respectively. Moving defendants' motion to dismiss the Title VI, Title IX, and Section 504 claims against them in their official capacities is granted.

>    3.   *Claims Against Defendants in Their Individual Capacities are Subject to Dismissal*

The Court next considers the claims against defendants in their individual capacities. Plaintiff's claims are either improper individual capacity claims or fail to state a plausible claim

13

for which relief can be granted, and thus moving defendants' motion to dismiss the claims made against them in their individual capacities is granted pursuant to Rule 12(b)(6).

### a. Title II ADA, Title VI, Title IX, and Section 504 Claims Are Improper Individual Capacity Claims

First, "[i]nsofar as [plaintiff] is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F. 3d 98, 107 (2d Cir. 2001). Second, "Title VI claims cannot be asserted against an individual defendant for the same reason that they cannot be asserted under Title IX – the individual is not a recipient of federal funding." *Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 214 F. Supp. 2d 273, 292 (E.D.N.Y. 2002). Thus, the Title VI, Title IX, Title II ADA, and Section 504 claims against moving defendants in their individual capacities are dismissed pursuant to Rule (12)(b)(6).

### b. Sections 1983, 1985, and 1986 Claims Against Defendants in Their Individual Capacities Fail to State a Plausible Claim

Moving defendants argue that they are entitled to qualified immunity for claims made against them in their individual capacities. (*See* Def. Mem. at 10-11.) Because their argument rests, however, on whether plaintiff plausibly alleges violation of a constitutional right, (*see id.* at 11), the Court begins by examining whether plaintiff plausibly alleges any discrimination claim pursuant to Sections 1983, 1985, or 1986.

To state a proper Section 1983 claim, plaintiff must demonstrate that he was deprived of a constitutional right under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau,* 292 F. 3d 307, 324-25 (2d Cir.

14

2002). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello,* 292 F. 3d at 325 (internal quotations and citation omitted).

Similarly, to state a claim of conspiracy to discriminate under Section 1985(3), plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Brown v. City of Oneonta,* 221 F. 3d 329, 341 (2d Cir. 2000) (internal quotation marks omitted). In addition, "[t]he conspiracy must be motivated by racial animus." *Id.* Since a Section 1986 claim is predicated on a valid 1985 claim, if the court finds no valid 1985 claim, there is no valid 1986 either. *Id.*

The gravamen of plaintiff's complaint is that the defendants' actions either individually or collectively discriminated against plaintiff on the basis of race, age, or disability, when they suggested different work goals for plaintiff and conditioned VESID funding on plaintiff undergoing a psychiatric evaluation. For the reasons provided in Section C(2)(b), *supra*, the Court finds that plaintiff fails to state a plausible claim and, therefore, the motion to dismiss Sections 1983, 1985, and 1986 claims against defendants in their individual capacities under Rule 12(b)(6) is granted.

      c.  **The State Law Breach of Contract Claim Against Defendants in their Individual Capacities is Dismissed Without Prejudice**

In order to further "fairness," "judicial efficiency," or to resolve any "novel or unsettled

issues of state law," this Court can exercise supplemental jurisdiction over state claims under 28 U.S.C. § 1367(c)(3). *Mauro v. S. New England Telecomms., Inc.,* 208 F. 3d 384, 388 (2d Cir. 2000). Nevertheless, if all independently supported federal claims have been dismissed, "the balance of factors . . . will [usually] point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988). Accordingly, this Court declines to exercise supplemental jurisdiction over plaintiff's state law breach of contract claim, which is dismissed without prejudice under Rule 12(b)(6).

                4.    *Due Process Claim Against Defendants in Both their Official and Individual Capacities*

The Court lastly considers plaintiff's claim of due process violation pursuant to Section 1983. "Two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F. 3d 189, 194 (2d Cir. 1995). Here, plaintiff fails to show that VESID funding is a constitutionally protected property interest or that the December 17, 2010 impartial hearing did not provide adequate procedural due process. Accordingly, defendants' motion to dismiss the due process claim is granted in its entirety.

In *Wasser v. N.Y. State Office of Vocational & Educ. Services for Individuals with Disabilities*, the court reviewed an impartial hearing decision regarding VESID funding pursuant to Section 722 of the Rehabilitation Act and determined it was "doubtful" plaintiff's right to VESID funding rose to the level of constitutionally protected entitlement. *See* 683 F. Supp. 2d 201, 215-16 (E.D.N.Y. 2008) *aff'd,* 602 F. 3d 476 (2d Cir. 2010) ("[t]he Rehabilitation Act, when setting forth eligibility requirements for vocational services, specifically states that nothing in that section of the Act 'shall be construed to create an entitlement to any vocational

rehabilitation service.'" (quoting 29 U.S.C. § 722(a)(3)(B)).  The court explained that:

> The New York State Court of Appeals, in its analysis of VESID's obligations under the Rehabilitation Act, has found that VESID has final authority over the contents of a beneficiary's IWRP, in part because VESID must retain discretion to ensure an appropriate disbursement of limited funds among its clients.

*Wasser*, 683 F. Supp. 2d at 215 (citing *Murphy v. VESID,* 92 N.Y. 2d 477, 488 (1998)).  This discretion precludes VESID's vocational benefits from rising to the level of a constitutionally-protected "entitlement."  *Id.* at 215-16.  As in *Wasser*, here it is doubtful that plaintiff's right to VESID funding rises to the level of a constitutionally protected "entitlement."

Even if VESID funding was a constitutionally protected entitlement, plaintiff has not alleged plausibly that the impartial hearing failed to provide adequate due process.  An IHO aptly merits a "presumption of honesty and integrity."  *See Withow v. Larkin*, 421 U.S. 35, 47 (1975).  Plaintiff neither provides evidence that the IHO did not meet the qualifications outlined in 8 N.Y.C.R.R. § 247.1(f), nor rebuts the IHO's notice of impartiality given at the beginning of the hearing.  (*See* Tr. 7-8, Compl., Ex. A.)  To the contrary, the hearing transcript demonstrates the IHO provided plaintiff ample opportunity to make arguments, submit evidence, and confront and cross-examine the witness, despite plaintiff's inappropriate personal attacks, interjections and objections.  *See Wasser*, 683 F. Supp. 2d at 216.

Plaintiff's contentions of an unfair hearing are meritless.  Plaintiff's allegation that that the hearing was unfair because the IHO "[wa]sn't there to find out the truth," (Compl. 16), erroneously takes out of context the IHO's remark that, "It was not a question of telling the truth."  (*See* Tr. 62, Compl., Ex. A.)  That remark only relates to plaintiff not being under oath during his cross-examination of a witness.  (*Id.*)  While plaintiff complains that the IHO should not have allowed Harris to testify, it was plaintiff himself who requested her testimony and allowing a witness to testify is within the powers conferred to the IHO by state law.  (Compl. at

17

17-18; *id.* at 156-58); *see* 8 N.Y.C.R.R. § 247.4; N.Y. A.P.A. Law § 304. Similarly, though plaintiff complained of defendant Samuels' absence at the impartial hearing, there is no indication that any subpoena for Mr. Samuels' appearance had been requested or made by plaintiff or the IHO. Lastly, plaintiff's contention that the hearing was a "sham" is meritless. (Compl. at 18.) Plaintiff's allegation that, because VESID was the party to contact the IHO, it would be more likely to compensate the IHO if she conducted a "kangaroo-hearing," is an unsupported conclusory allegation. (Compl. 15.); *see Iqbal*, 556 U.S. at 662. As is plaintiff's assertion that, by finding some of plaintiff's statements not credible at the hearing, Schneider went "right along with the **MOB** of **RACIST** (VESID) counselors." (Compl. 16-17 (emphasis in original).)

Plaintiff cannot meet either of the two threshold requirements for a due process claim under § 1983, and, therefore, moving defendants' motion to dismiss this claim is granted.

## III. MOTION FOR DEFAULT JUDGMENT

On January 27, 2012, plaintiff moved for entry of default as to defendants Harris and Schneider pursuant to Fed. R. Civ. P. 55(b). (*See* Doc. Entry Nos. 24, 25.) Plaintiff's motion for default judgment is denied because defendants Harris and Schneider were not properly served and, because, as described above, plaintiff's claims are without merit.

"The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court." *Enron Oil Corp. v. Diakuhara,* 10 F. 3d 90, 95 (2d Cir. 1993). First, Harris and Schneider were never properly served and, therefore, are not in default. By December 2, 2011, all defendants, except for Harris and Schneider had been served. (*See* Doc. Entry Nos. 5, 9, 10, 13.) The United States Marshals Service ("USMS") made several attempts to serve Harris and Schneider; however, the summonses were returned unexecuted on February 10, 2012, and again on March 20, 2012. (*See*

18

Doc. Entry Nos. 28, 29, 32, 33.) The unexecuted summonses had the address for the VESID office in Brooklyn and indicated that Harris had retired from VESID and Schneider "works in Albany, NY," and, therefore, the summonses would not be accepted. (*See* Doc. Entry Nos. 28, 29.) On November 4, 2011, in a letter to the Court, plaintiff inquired why Samuels was the only defendant who had not been served yet by the USMS, and, on December 5, 2011, in another letter, plaintiff inquired why Harris and Schneider had not entered a notice of appearance yet. (*See* Doc. Entry Nos. 8, 14.) However, upon notification that defendants Harris and Schneider could not be served at VESID, plaintiff took no further steps to ensure defendants were properly served.

Second, once a default is determined, a district court has discretion to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F. 2d 61, 65 (2d. Cir. 1981); Rule 55(b)(2). Here, the Court finds that, even if service had been completed for Harris and Schneider, the motion for default judgment is denied because, for the reasons discussed above, plaintiff's claims are also without merit as to Harris and Schneider. Therefore, the motion for default judgment is denied and the complaint is dismissed.

## CONCLUSION

For the foregoing reasons, the moving defendants' motion to dismiss the complaint is granted in its entirety. The federal claims are dismissed with prejudice and the state claim is dismissed without prejudice. Plaintiff's motion for default judgment is denied. Accordingly, the complaint is dismissed in its entirety. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

DATED:    Brooklyn, New York
          September 24, 2012

                                          _____/s/_____
                                          DORA L. IRIZARRY
                                          United States District Judge